IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SUSAN DIANE THOMAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:20-CV-00093-DGK |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This action seeks judicial review of the Commissioner of Social Security's ("the Commissioner") decision denying Plaintiff Susan Diane Thomas' application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. The Administrative Law Judge ("ALJ") found Plaintiff had several severe impairments, including common variable immunodeficiency ("CVID"), arthritis, degenerative disc disease of the cervical spine, fibromyalgia, and migraine headaches. He also found that she retained the residual functional capacity ("RFC") to perform past work as a dispatcher and dispatcher of tow trucks.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed her application for benefits on August 7, 2017, alleging a disability-onset date of March 10, 2017. The Commissioner denied the application at the initial claim level, and

Plaintiff appealed the denial to an ALJ. The ALJ held a hearing on November 30, 2018 and, on January 14, 2019, issued a decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on December 13, 2019, leaving the ALJ's decision as the Commissioner's final decision. As Plaintiff has exhausted all administrative remedies, judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole and whether the ALJ committed any legal errors. *Igo v. Colvin,* 839 F.3d 724, 728 (8th Cir. 2016). Substantial evidence is less than a preponderance but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin, 789 F.3d 847, 852* (8th Cir. 2015); *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (noting the substantial evidence standard of review "defers to the presiding ALJ, who has seen the hearing up close"). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

## Discussion

The Commissioner follows a five-step evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) [her] impairments, alone or combined, are medically severe; (3) [her] severe impairments meet or

determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). Plaintiff argues the ALJ erred at step four by crafting an RFC unsupported by substantial evidence, and then at step five by relying on this flawed RFC to determine she was capable of performing past relevant work.

## I.   The RFC is supported by substantial evidence.

In determining Plaintiff's RFC, the ALJ first determined that Plaintiff's medically determinable impairments—CVID, migraines, arthritis, degenerative disc disease of the cervical spine, and fibromyalgia—could reasonably be expected to cause her alleged symptoms. R. at 14, ECF No. 8-1. However, the ALJ then held that the alleged intensity, persistence, and limiting effect of Plaintiff's symptoms was not consistent with the relevant medical and opinion evidence. *Id.* The ALJ concluded that Plaintiff had the residual functional capacity to perform light work as defined by 20 C.F.R. § 404.1567 (b),[2] with the following additional limitations: she "can lift and carry ten pounds occasionally and less than ten pounds frequently; can sit for six hours of an eight-hour day; can occasionally climb ramps and stairs, climb ladders, ropes, or scaffolds, stoop, kneel, crouch, and crawl; can occasionally work at unprotected heights and around moving mechanical parts; and occasionally work in dust, odors, fumes, and pulmonary irritants." R. at 13. Based upon the RFC, the ALJ then found that Plaintiff is capable of performing past relevant work as a

---

medically equal a listed impairment; (4) [her] residual functional capacity precludes [her] past relevant work; and (5) [her] residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 416.920(a)–(g). Through step four of the analysis the claimant bears the burden of showing she is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

[2] Plaintiff's RFC is functionally equivalent to a finding that Plaintiff could perform sedentary work as defined by 20 C.F.R. § 404.1567 (b).

Dispatcher and Dispatcher of Tow Trucks. R. at 16. Plaintiff argues that the ALJ crafted a residual functional capacity which is not supported by substantial evidence.

Plaintiff makes multiple arguments that the RFC is not supported by substantial evidence. Each argument is addressed below.

Plaintiff argues the ALJ was wrong to consider the conservative nature of Plaintiff's fibromyalgia treatment because he did not first comply with the requirements of Social Security Ruling ("SSR") 16-3p. SSR 16-3p sets out the process and factors an ALJ considers in evaluating the intensity, persistence, and limiting effect of a claimant's symptoms. SSR 16-3p, 2017 WL 5180304 at *8–9 (Oct. 25, 2017). Plaintiff argues that, before considering the conservative nature of Plaintiff's treatment, SSR 16-3p required the ALJ to consider the "possible reasons . . . she may not comply with treatment or seek treatment consistent with the degree of . . . her complaint." Pl.'s Br. 26–27, ECF No. 17 (quoting SSR 16-3p, 2017 WL 5180304 at *9). However, the ALJ did not find that Plaintiff had failed to comply with any prescribed treatment or that Plaintiff had failed to seek treatment on par with her fibromyalgia symptoms. R. at 13–16. The ALJ merely found that the treatment which Plaintiff's treating physician had prescribed was of a conservative nature. R. at 15 ("The claimant has received mostly conservative treatment, including physical therapy, nerve blocks, TENS unit therapy, acupuncture, and prescribed medications, such as Lortab, skelaxin, plaquenil, Norco, and ibuprofen."). SSR 16-3P allows this consideration. *See* 2017 WL 5180304 at *8 (noting that an ALJ may consider "[t]he type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms," and "[t]reatment, other than medication, an individual receives or has received for relief of pain or other symptoms"). As such, the ALJ did not err by considering the conservative nature of Plaintiff's fibromyalgia treatment.

4

Plaintiff then argues that the ALJ erred because, in determining Plaintiff's RFC, the ALJ "did not identify in the decision whether [Plaintiff] possessed transferable skills or whether she was capable of performing other work in the national economy." Pl.'s Br. 27. An RFC calculation captures a claimant's "impairment(s), and any related symptoms, such as pain [which] may cause physical and mental limitations that affect what [a claimant] can do in a work setting." 20 C.F.R. § 404.1545(a). It is used "at step four of the sequential evaluation process to decide if [a claimant] can perform [their] past relevant work," and, if the ALJ finds that a claimant cannot perform their past relevant work, "at step five . . . to decide if [a claimant] can adjust to any other work that exists in the national economy." *Id.* The ALJ must formulate an RFC first before deciding, if necessary, whether a claimant can perform other work in the national economy. *See id.* However, Plaintiff's argument reverses the sequential evaluation process. Plaintiff argues that the ALJ must consider whether a claimant has transferrable skills or can perform other work in the national economy in order to formulate an RFC. Because these considerations are irrelevant to an RFC determination, the ALJ did not err by not considering whether Plaintiff can perform other work in the national economy or possesses any transferrable skills.

Next, Plaintiff argues that the RFC is unsupported because the ALJ failed to consider whether Plaintiff's migraine headaches and her CVID treatment would force her to miss work. The ALJ considered Plaintiff's allegations that she suffered from migraines which last up to three days and that her monthly, intravenously-administered CVID treatment makes it difficult for Plaintiff to perform "activities of daily living" for two days after the treatment. R. at 14. The ALJ ultimately concluded that Plaintiff's impairments were less limiting than she had alleged, and that the RFC sufficiently accounted for these limitations. R. at 14–15. Substantial evidence supported the ALJ's conclusion. Regarding Plaintiff's migraines, on December 6, 2016, Plaintiff reported to

5

Dr. Salman Malik, M.D., that her headaches had become less severe, less intense, and less frequent. R. at 522. Dr. Malik also noted that a high dosage of Topamax made Plaintiff's migraines significantly more manageable. R. at 533. Regarding Plaintiff's CVID treatment, Lauren Schaeffer, an Advanced Practice Registered Nurse ("APRN"),[3] examined Plaintiff on August 21, 2017, and noted that Plaintiff was tolerating her monthly infusions well and without issues. R. at 332. Jennifer Roggy, APRN, also noted on February 4, 2017, that Plaintiff tolerated her CVID treatment well. R. at 1185.

Plaintiff also argues that the RFC is flawed because certain pieces of evidence which the ALJ relied on do not constitute substantial evidence. For example, Plaintiff contends that the opinion of Dr. Paul Spence, M.D., a state agency medical consultant whose opinion the ALJ partly relied on to formulate the RFC, is not substantial evidence because Dr. Spence "had neither an examining nor a treating relationship" with Plaintiff and only reviewed medical evidence from before December 5, 2017. Pl.'s Br. at 27.

Plaintiff misunderstands the standard applicable to social security cases. The ALJ's opinion, and by extension the ALJ's RFC determination, must be supported by substantial evidence on the record as a whole. *Lauer v. Apfel*, 245 F.3d 700, 706 (8th Cir. 2001). *See also Igo*, 839 F.3d at 728. This does not mean, as Plaintiff seems to understand it, that each piece of evidence must itself constitute substantial evidence to support the ALJ's opinion. When the whole record is considered, pieces of evidence which would not alone constitute substantial evidence may be considered together. If, when considered together, the evidence in the record reaches the

---

[3] Although not equivalent to a treating source under the regulations, an APRN is a medical source whose opinion is important and "should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." SSR 06-3P, 2006 WL 2329939, at *3 (Aug. 9, 2006); *Johns v. Saul*, No. 3:19-cv-00354 PSH, 2020 WL 4793448, at *3 (E.D. Ark. Aug. 18. 2020) (defining the acronym "APRN").

6

Case 4:20-cv-00093-DGK   Document 20   Filed 03/23/21   Page 6 of 10

threshold of substantial evidence, i.e., that "a reasonable mind would find it sufficient" to support the ALJ's decision, the Court must uphold the decision. 839 F.3d at 728.

In the present case, substantial evidence on the record as a whole supports the ALJ's RFC determination. For example, regarding the intensity, persistence, and limiting effects of Plaintiff's CVID and her CVID treatment, Plaintiff has been treated for bronchitis and upper respiratory infections as a result of her immunodeficiency, but has not undergone any significant hospitalizations. R. at 332. Colonoscopies and biopsies performed in 2016 were negative. R. at 307. Further, multiple treating physicians have noted that she tolerates her intravenous treatments "well" or "extremely well." R. at 295, 299, 307, 332, 1144. APRN Roggy noted on August 9, 2016, and November 10, 2016, that the infusions cause Plaintiff no nausea and only mild headaches. R. at 299, 307.

Regarding the intensity, persistence, and limiting effects of Plaintiff's migraines, examinations on April 4, 2016, March 3, 2016, June 1, 2016, August 9, 2016, November 10, 2016, February 10, 2017, August 21, 2017, January 22, 2018, August 10, 2018, and September 7, 2018 noted that Plaintiff's neurological condition was normal and/or that she was alert and oriented. R. at 279, 275, 293–94, 301 309, 318, 336, 593, 601–02, 1023. Further, Dr. Malik noted on Dec 6, 2016, and December 18, 2017 that Plaintiff's headaches were better, and not as severe, intense, or frequent. R. at 368, 526. Dr. Malik also noted on December 18, 2017 that Plaintiff's migraines had "improved steadily since starting Topamax." R. at 526. Dr. Malik also noted that a high dosage of Topamax made Plaintiff's migraines "much better," and that Midrin also helped Plaintiff's migraines. *Id.*

With regard to the intensity, persistence, and limiting effects of Plaintiff's arthritis, degenerative disc disease, and fibromyalgia, Plaintiff has often presented with normal findings.

7

The ALJ's decision noted that Plaintiff often presents with "normal range of motion, no significant joint sensation, intact coordination, normal gait, no clubbing, no cyanosis, no edema, symmetric peripheral pulses, no swollen or tender joints, no synovitis, grip strength equal bilaterally, good range of neck motion, and intact neurological assessment." R. at 15. These findings are supported by the record. R. at 293, 309, 327, 336, 368, 430, 526, 554, 581, 593, 601, 610, 627, 635, 777, 791, 816, 843, 1023. The ALJ also found, and the record supports, that treatment for these conditions was conservative. R. at 15, 276, 478, 481–84, 487, 491, 493, 495, 582, 596, 660, 673, 1296, 1298, 1322, 1348, 1350. Despite the conservative nature of her treatment, Plaintiff reported in January 2018 that the treatment improved her conditions by 70 to 80 percent. R. at 596. Further, Plaintiff's physical therapist, Amy Hay PT, ScD, COMT, often noted that physical therapy significantly decreased Plaintiff's pain. R. at 483, 486, 487, 490, 492, 494, 1299, 1301, 1303, 1331. *See Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) ("[I]t is proper for the ALJ to conclude impairments that are controllable or amenable to treatment do not support a finding of total disability.") (citation omitted).

The Court also notes that Plaintiff does not dispute the ALJ's credibility determination; that is, the ALJ's finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision." R. at 14. Nor could she, because this finding is supported by substantial evidence. For example, Plaintiff is active on a daily basis. *See generally Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (holding that an ALJ must consider a claimant's daily activities when determining the limiting effects of an impairment). Plaintiff testified that she cooks once or twice per week, does laundry a few times per week, helps feed her mother, shops for groceries, helps her sister take care of church kids, takes care of her cat,

and goes out to dinner with her son three times per month. R. at 40–42. Plaintiff also reported in August 2018 that her medications and treatment allowed her to clean her home, do laundry, and care for her mother. R. at 666. The fact that Plaintiff can perform all these activities is a valid reason to discount her credibility. *Ponder v. Colvin*, 770 F.3d 1190, 1195 (8th Cir. 2014).

Additionally, the record indicates Plaintiff stopped working because her job was eliminated, not because her health forced her to stop. Plaintiff testified that she stopped working because her employer cut her job as a dispatcher and she was concerned that her health would make it too difficult for her to take a new job at a different company. R. at 32; s*ee also* R. at 1185; *see Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) ("Courts have found it relevant to credibility when a claimant leaves work for reasons other than her medical condition."). Though Plaintiff decided not to seek new work because of concerns regarding her health, her health did not force her to stop working.

Finally, there is no merit to Plaintiff's claim that the ALJ failed to fully and fairly develop the record with respect to her RFC. Pl.'s Br. 25. The ALJ found that the opinion of Dr. Christopher Sirridge, M.D., Plaintiff's treating physician, was not persuasive. R. at 16. Plaintiff argues that the ALJ's duty to develop the record therefore required him to "obtain some medical opinion from a treating or examining physician as to Thomas' functional limitations,"[4] and that because the ALJ failed to obtain an additional opinion, he impermissibly relied on his own medical expertise to formulate the RFC. Pl.'s Br. 25. However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Where the medical record is adequately developed, an ALJ is not required to seek an additional

---

[4] This argument assumes that the ALJ erred by relying on the opinion of APRN Roggy, who also examined and treated Plaintiff. R. at 1183–1190. However, Plaintiff does not argue that the ALJ erred by relying on APRN Roggy's opinion. Pl.'s Br. 25. Plaintiff only argues that APRN Roggy's opinion is not substantial evidence to support the ALJ's decision—an argument which the Court has already addressed.

9

medical opinion. *Id.* In this case, the medical record was adequately developed, as it contained over 1000 pages of medical records prepared by Plaintiff's treating physicians from throughout the relevant period. *See id.* ("[M]edical records prepared by the most relevant treating physicians can provide affirmative medical evidence supporting the ALJ's residual functional capacity findings.") (citation omitted). The ALJ therefore had no duty to obtain any additional medical opinions.

## II. The ALJ did not err in relying on the RFC at step five.

Finally, Plaintiff contends that because the RFC is flawed, the hypothetical he posed to the vocational expert concerning Plaintiff's ability to perform past relevant work. Because the Court finds no err in the RFC, there was no error in the hypothetical posed to the vocational expert whose answer is the basis for the ALJ's determination that Plaintiff can perform past relevant work.

### Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date: <u>March 23, 2021</u>       /s/ Greg Kays
                                  GREG KAYS, JUDGE
                                  UNITED STATES DISTRICT COURT